### MILLARD PATTERSON v. SOUTHERN PACIFIC COMPANY ET AL.

#### Decided January 8, 1902.

**1.—Railway Company—Bridge Toll—Passenger Enhancing Damages.**

Where plaintiff, a railroad passenger, knew that a toll of 50 cents would be illegally exacted on crossing a bridge that would be reached at midnight, and refused to avail himself of an offered opportunity of paying it before retiring, and, on being awakened at the bridge and the toll demanded, refused to pay and persisted in such refusal until force was used on his person, and for the sole purpose of enhancing the damages, the court correctly charged that he was not entitled to enhanced damages for the assault and indignities so brought about.

**2.—Same—Evidence Raising Issue—Enhancement of Damages.**

Evidence held sufficient to warrant a charge submitting the issue of whether plaintiff's refusal to pay the toll and resistance until the assault was made, was for the purpose of enhancing his damages, and also to sustain a finding to that effect.

**3.—Charge—Harmless Error.**

Where plaintiff appeals from a judgment in his favor because the damages awarded are inadequate, the giving of an erroneous charge which could not possibly have affected the amount of the damages was harmless error.

Error from El Paso. Tried below before Hon. A. M. Walthall.

*C. N. Buckler* and *Peyton F. Edwards,* for plaintiff in error.

*Beall & Kemp,* for defendant in error.

JAMES, Chief Justice.—The nature of this action is fully shown in the opinions delivered on previous appeals. 7 Texas Civ. App., 451, 46 S. W. Rep., 848. The issues at present before the court are few, and we shall not attempt any statement except as the assignments are discussed. At the last trial verdict was for plaintiff (now plaintiff in error) for $1 actual and $240 exemplary damages.

The first and second assignments are as follows:

"First assignment of error: The court erred in that part of its charge wherein it instructed the jury that if the conductor demanded the 50 cents from the plaintiff in the daytime, that it was plaintiff's duty to have paid it, and that not having paid it in the daytime, he could not recover for inconvenience caused by the 50 cents having been demanded and collected in the night after he and his wife had retired to bed, because the demand and collecting of the 50 cents in the daytime would have been as unlawful and unjustifiable as it was when demanded and collected in the nighttime, and whether demanded in the daytime or in the nighttime, plaintiff had the legal right to refuse to pay it, and was under no obligation to pay it during the day in order to keep from being disturbed in the night by a demand for the 50 cents."

"Second assignment of error: The court further erred in that part of its charge wherein it instructed the jury that if plaintiff resisted the payment of said 50 cents for the purpose of enhancing his damages, that he could not recover for the assault, inconvenience, mental pain and suffering or humiliation, because there was no testimony justifying the court in submitting any such issue to the jury, and said portion of said charge was calculated to mislead the jury, as shown by their verdict wherein they allowed the plaintiff $1 actual damages, thus showing that they allowed him nothing on account of the assault, mental suffering, inconvenience, and humiliation caused by the unjustifiable demand and collection of the 50 cents from him at midnight after he and his wife had retired for the night."

The fragment of the charge which plaintiff in error sets out in his brief as the part complained of is as follows: "If, however, you should believe from the evidence that the conductor of said train in the daytime, and on the day before said train reached said Pecos bridge, or before said O'Rourke demanded of plaintiff the payment of said sum of 50 cents bridge fare, informed plaintiff that he would have to pay 50 cents bridge fare before crossing said bridge, and that as an accommodation to him, plaintiff, he, the train conductor, would receive said sum and pay same over to the bridge conductor and thus relieve plaintiff of being disturbed after he should have retired for the night, and

that plaintiff refused to pay said fare, but afterwards retired for the night with his wife in said berth, and that the said O'Rourke, in awakening plaintiff after he had retired, did so solely for the purpose of requesting the plaintiff to pay said fare, and that the plaintiff at the time had the opportunity and the means to pay the same, and the plaintiff refused to pay the said 50 cents fare solely for the purpose of causing the said O'Rourke to enforce from him the collection of the same, and that in refusing to pay said bridge fare plaintiff was prompted or induced by a motive to enhance or contribute to his injuries, then and in that event, if you so believe such was the purpose and motive of plaintiff, you will not be authorized to include in your estimate of damages, if any, any assault, inconvenience, mental pain, suffering, or humiliation, if any he suffered, occasioned, contributed to, or brought about by plaintiff's purpose and motive aforesaid."

The court first charged the jury that the demand of 50 cents for crossing the bridge was unlawful.

That portion of the charge which preceded the above quotation in the same paragraph practically instructed the jury to find for plaintiff, under the evidence, such actual damages as he sustained, and in so doing they might consider the assault, if any, the inconvenience, mental pain, suffering, and humiliation, if any, suffered by plaintiff on account of the conduct of the conductors. That part above quoted was a qualification of the instruction with respect to the matter of assault, inconvenience, etc., and thereby the jury were told upon what state of facts plaintiff would not be entitled to recover as to such particular matters. The rule stated by the court in this connection was in accordance with the decision of the court in the former appeals. Besides the authorities there cited, we may add Railway v. Barlow, 30 Southwestern Reporter, 733.

There can be no reason why the principle should be limited to cases where a person boards a train with the purpose of getting himself put off, or with the purpose of having the employes resort to proceedings to that end.

The paragraph of the charge containing what appellant quotes is concluded by these words: "But if you should believe from a preponderance of the evidence that plaintiff, in refusing to pay said train conductor and the said O'Rourke the sum of 50 cents as bridge fare, did so with the knowledge that the same was unlawful, extortionate, and unjust, and under the belief that the unlawful demand or exaction would be abandoned, with no purpose on the part of plaintiff except to resist as long and as far as practicable the unlawful conduct and demands of the said O'Rourke, you will find for the plaintiff such actual damages as will compensate him for the injuries sustained as hereinbefore directed."

The first proposition under these assignments seeks to bring into question again the correctness of the doctrine denying plaintiff the right to recover for inconvenience, humiliation, etc., which he may have willingly

occasioned and brought upon himself for the purpose of enhancing his damages. Upon this question we adhere to what we have already held, being convinced that the rule is correct.

The second proposition is that there was no evidence to justify its application in this case. Although plaintiff's 1000-mile ticket stated in plain letters upon its face "Not good over Pecos bridge," plaintiff on going from El Paso to San Antonio intended to resist payment of the bridge fare, and announced to the conductor when his mileage was taken up that he would not pay such fare and he could act upon that conclusion, and that he could afford to be put off the train if the company could stand it. However, he was not molested at the bridge that night. On his return trip to El Paso, when the conductor took his fare, the latter told him that he would have to pay 50 cents fare over Pecos bridge. Plaintiff replied that he had heard that before, and would not submit to such an outrage. They continued to talk about it, the conductor offering to receive the 50 cents and turn it in to the bridge conductor during the night, so that plaintiff, who was on the sleeper, would not be disturbed. Plaintiff testified that when he first spoke to the conductor he determined that he would let himself be put off, because he had made up his mind about the obligation to pay the 50 cents. About midnight the train arrived at the bridge and stopped so that the bridge conductor might collect the fares. Plaintiff was awakened by the bridge conductor and refused to pay. Plaintiff had the train conductor called and asked his protection. He had instructions not to interfere. Some time was consumed in a discussion of the matter and in demands and refusals to pay, and the bridge conductor finally said he would compel plaintiff to get off the train and took hold of him. Plaintiff said he then discovered that the conductor was in earnest, and asked him for a receipt and paid the 50 cents. The conductor's version of the finale was that he told plaintiff that if he didn't pay he would have to put him off. "He said, 'Why don't you do it?' I said, 'If you want me to take hold of you, which seems evident, I can do that.' He was in bed, but leaning on his elbow. He had the curtains slightly separated. I reached in and laid my hand on his shoulder. He said, 'That is all I want,' and paid the fare, taking a receipt. Plaintiff stated that he had a motion to argue in Colorado City on the following Tuesday, and could not have gotten there in time unless he went through on that train."

It seems to us that while there may have been testimony and inferences which would have warranted the jury in finding that plaintiff went to these extremes expecting and believing that the conductors would finally relent and forego the exaction, this is equally true with regard to a finding that plaintiff did not so believe, that he had no idea of allowing himself to be put off, but intended all along to submit to the exaction, and brought on the proceedings of which he complains in order to aggravate his case for damages. The proposition is therefore not sustained.

The third assignment complained of in the seventh paragraph of the charge reads: "The jury are instructed that the contract of carriage read in evidence did not entitle plaintiff to free transportation over the Pecos bridge, and the plaintiff is bound by every provision of said contract, whether he read it or not." Why this paragraph was inserted in the charge is not clear to us. Plaintiff does not appear to have contended that he was entitled to free transportation, and the testimony indicates that his regular fare to defendant over the space covered by the bridge was included in what was taken from his mileage ticket. But we fail to see how, in view of the charges and the verdict, plaintiff was injured. The jury were peremptorily told that the demand made on plaintiff was unlawful. The evidence was such that the effect of this instruction was practically that plaintiff should recover, and the verdict also was in plaintiff's favor. The paragraph complained of was not in the way of plaintiff's recovery for the fare exacted and interest thereon, nor for exemplary damages, for he was awarded both. He evidently was denied damages for the assault, annoyance, humiliation, etc., and while we can see no possible connection between this result and the paragraph in question, it can be plainly attributed, and in our judgment must necessarily be attributed, to that portion of the court's charge which informed the jury under what circumstances these matters should not be taken into consideration.

The fourth assignment is that the verdict is inadequate in amount. We overrule this assignment. The judgment is affirmed.

*Affirmed.*

Writ of error refused.